IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| MARLENE BAKER, | CASE NO. _____ |
| Plaintiff, | |
| vs. | |
| VON MAUR, INC., | **ORIGINAL NOTICE** |
| Defendant. | |

TO THE ABOVE-NAMED DEFENDANT(S):  Von Maur, Inc. c/o its Registered Agent,
Richard A. Davidson
220 N. Main Street, Suite 600
Davenport, Iowa 52801

You are notified that a Petition at Law and Jury Demand has been filed in the office of the clerk of this court on December 6, 2016, naming you as the defendant(s) in this action. A copy of the Petition at Law and Jury Demand is attached to this notice. The names and address of the attorneys for the plaintiff(s) are Michael J. Carroll and Megan Flynn of Coppola, McConville, Coppola, Hockenberg & Scalise, P.C., 2100 Westown Parkway, Suite 210, West Des Moines, Iowa 50265. The attorneys' phone number is 515-453-1055; facsimile number:  515-453-1059.

You must serve a motion or answer within 20 days after service of this original notice upon you, and within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Scott County, 400 W. 4th Street, Davenport, Iowa 52801-1104. That must be filed electronically as set out below. If you do not, judgment by default may be rendered against you for the relief demanded in the petition. **YOU MUST ELECTRONICALLY FILE** an Appearance and Answer using the Iowa Judicial Branch Electronic Document Management System (EDMS) at https://www.iowacourts.state.ia.us/EFile, unless you obtain from the Court an exemption from electronic filing requirements. If your Appearance and Answer is filed within 20 days and you deny the claim, you will receive electronic notification through EDMS of the place and time of the hearing on this matter. If you electronically file an Appearance and Answer, EDMS will serve a copy of the form on the Plaintiff, unless Plaintiff is exempt from electronic filing, or on the attorney for Plaintiff. The Notice of Electronic Filing will indicate if you must mail a copy of your Appearance and Answer to Plaintiff. You must also notify the Clerk's Office of any address change.

If you require the assistance of auxiliary aids or services to participate in court because of disability, immediately call your district ADA coordinator at (515) 286-3770. (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942.)

**IMPORTANT:** YOU ARE ADVISED TO SEEK LEGAL ADVICE AT ONCE TO PROTECT YOUR INTERESTS

# STATE OF IOWA JUDICIARY

*Case No.* **LACE128358**

*County* **Scott**

*Case Title* **MARLENE BAKER V. VON MAUR, INC.**

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

**FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:**
http://www.iowacourts.state.ia.us/Efile

**FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16:** http://www.iowacourts.state.ia.us/Efile

*Scheduled Hearing:*

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(563) 328-4145** . (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued* **12/06/2016 03:28:06 PM**



*District Clerk of* Scott                          *County*
**/s/ Rachel Vens**

IN THE IOWA DISTRICT COURT FOR SCOTT COUNTY

| | |
|---|---|
| MARLENE BAKER, | CASE NO. _____ |
| Plaintiff, | |
| vs. | |
| VON MAUR, INC., | **PETITION AT LAW AND JURY DEMAND** |
| Defendant. | |

Plaintiff, Marlene Baker (hereinafter "Plaintiff" or "Baker"), in support of her Petition at Law against Defendant Von Maur, Inc. ("Von Maur"), states as follows:

## I.   **INTRODUCTION**

1.     This is an action by the Plaintiff against the Defendant alleging violations of the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq.* and also alleging that Plaintiff was discriminated against because of her age and disability in violation of the Iowa Civil Rights Act, Iowa Code Chapter 216, and the Americans with Disabilities Act as amended by the American with Disabilities Act Amendments ("ADAAA"), 42 U.S.C. § 12101 *et seq.*  Plaintiff also alleges her termination was a violation of the public policy of the State of Iowa.

## II.   **PARTIES**

2.     Plaintiff was at material times hereto a resident of Scott County, Iowa, and an employee of Defendant.

3.     Defendant Von Maur, Inc. is an Illinois corporation doing business in Iowa and nationally with its principal place of business and home office in Davenport, Iowa.

### III.     JURISDICTION AND VENUE

4.     This Court has jurisdiction over this matter as the value exceeds the small claims jurisdictional amount.

5.     Venue is appropriate in this court as Defendant is doing business in Davenport, Scott County, Iowa.

### IV.     PROCEDURAL PREREQUISITES

6.     Plaintiff timely filed her administrative complaint with the Iowa Civil Rights Commission and Equal Employment Opportunity Commission and was issued right to sue letters.

### V.     FACTS

7.     Defendant Von Maur, Inc. is a department-store business that operates approximately 30 stores located in fourteen different states.

8.     Defendant's headquarters and distribution center are both located in Davenport, Iowa.

9.     Plaintiff was employed by Defendant at Defendant's headquarters from October 19, 2009 until the date Defendant fired her, July 28, 2015.

2

10.    On the date she was terminated, Plaintiff was 57 years old and was the oldest employee working in Defendant's computer operations group.

11.    Plaintiff began with Defendant as a customer service employee in Defendant's credit department.

12.    In early 2010, Plaintiff applied for and was offered a job as a Computer Operator.

13.    In 2012, Plaintiff was promoted to Infrastucture Support Associate.

14.    In October of 2013, the Infrastructure Support Associate position was eliminated and Plaintiff again assumed the Computer Operator position.

15.    During approximately the same timeframe, Plaintiff was given a new supervisor, Angela Ubel.

16.    Baker estimates that Ubel was approximately 35 years old at the time.

17.    On April 16, 2014, Plaintiff received her first-ever write up at work from Ubel. The write up accused Baker of having an unprofessional conversation with a co-worker.

18.    The conversation at issue occurred when Baker talked with a second-shift employee and commented that she thought second-shift employees should make more money because they had to perform additional duties.

19.    On June 2, 2014, Plaintiff injured her left shoulder while at work.  Plaintiff lifted a heavy group of printouts from the printer and carried them to the table and felt a pop in her shoulder.

20.    That morning, Plaintiff mentioned to her supervisor, Ubel, and Angie in human resources that she thought she had pulled something but that she would wait a couple of days to see if it felt okay.

21.    Later that day, Angie called Plaintiff in and said someone overheard Plaintiff say she "wasn't going to work her but off anymore" with respect to her Computer Operator job.

22.    Plaintiff informed Angie that she didn't make that statement.

23.    After a couple of days, Plaintiff did not feel better so she returned to human resources and they scheduled an appointment with an assigned physician.

24.    On June 5, 2014, Plaintiff received her second-ever write up from Defendant.

25.    That day she was called into Ubel's office and was told she did not start the monthly fiscal print job soon enough and that she left certain collections-related reports on the laser printer outside the computer operations room, which was not proper because it was not a secure location.

26.    In fact, Plaintiff had started the print job in the morning, as she had been requested.  No one had ever told Plaintiff that there was a need to protect the

4

collections-related reports or remove them from the laser printer outside the computer room.

27.    Plaintiff believed the two write ups she received were unfair, and complained to Gayle Haun, head of human resources.  Plaintiff informed Haun of the write ups and that Plaintiff thought she was being picked on and that no management in the past had had any concerns with Plaintiff's work.  Plaintiff expressed that she felt she was being treated differently from other employees.  Haun responded that one solution could be that Plaintiff could go back to not being the lead operator in the computer room, which was a promotion Plaintiff had received in approximately April of that year, and that perhaps more was expected of Plaintiff as a lead operator.

28.    Plaintiff refused the demotion Haun offered.

29.    During the course of her employment, Baker witnessed a younger employee leaving the same collections reports on the laser printer outside the computer room, the same location Baker had left them.

30.    Defendant was informed of the reports left by the younger employee, but the younger employee was not disciplined.

31.    On July 11, 2014, while seeking treatment for her work-related shoulder injury, Plaintiff was told by Defendant's assigned worker's compensation physician, Dr. Frederick, that x-rays of her shoulder did not reveal a fracture.  Dr. Frederick prescribed

ibuprofen, a sling, and exercises.  Dr. Frederick also commented during this visit that Baker was "too old" for her job.

32.     On July 7, Plaintiff underwent an MRI.

33.     On July 18, 2016, Dr. Frederick changed her prior diagnosis and advised Plaintiff that her collar bone was broken.  However, Dr. Frederick concluded that the injury was not work-related.

34.     On August 7, 2014, Plaintiff obtained a second opinion regarding the cause of her fractured collar bone.  This physician, Dr. Foad, concluded Plaintiff's injury was work related.

35.     Until November, 2014, Plaintiff worked pursuant to various medical restrictions that included a limitation, by weight, of what Plaintiff could lift.

36.     On October 15, 2014 Plaintiff wanted to apply for Ubel's supervisory position, due to Ubel being promoted.

37.     Plaintiff was required to approach Ubel to seek permission to apply for that job. When Plaintiff approached her, Ubel told Plaintiff that she could not apply for the position because of performance issues.

38.     Whitney Mans was hired to fill Ubel's position starting June 7, 2014.

39.     Baker estimates Mans to have been approximately 26 years old at the time she was hired.

6

40.     On April 7, 2015 Plaintiff received her third write up from Defendant.
Plaintiff was called into Mans's office where she told Plaintiff that she had learned that
Baker notified payroll of hours for which Baker had not been compensated after
reviewing an hours report Baker was responsible for printing.  According to Mans, this
was a violation of Defendant's policy because payroll reports were confidential and
thus Baker should have printed the report and circulated it but should not have
reviewed it.

41.     Baker explained that due to a time clock issue, she was concerned she had
not been compensated for all of her time for the prior week.  Thus, she reviewed only
her hours on the hours report (her name was right near the top).  She also reminded
Mans that she had asked Mans to ensure that Baker received all compensation due three
times during the preceding days but the report showed she had not been compensated
for all of her time.

42.     On July 20, 2015, Baker, who was lead computer operator, learned from a
co-worker that there was a job posting for a new computer operator position on the Von
Maur website.  Baker had not heard anything about a potential addition to her
department.  Baker went into Mans's office that morning to ask about it.  Mans
informed Baker they would have a staff meeting later that day regarding the new
posting.

7

43.     At the same visit to Mans's office that she inquired about the open computer operator position, Baker also informed Mans that her mom, who was 92, had fallen the previous Friday and hurt her back.  Baker said she did not think she would miss much work because Baker's brother would help Baker's mom during the day and Baker could help during nights and weekends, which was Baker's regular scheduled time off.

44.     Later that day Baker took a half-hour off work to accompany her mom to her mom's doctor's appointment.

45.     The announcement regarding the open computer operator position was made after Baker left for the appointment.

46.     Baker called a co-worker at Defendant later in the afternoon on July 20, 2015 to obtain information regarding the announcement and the co-worker told her that Mans instructed everyone in the groups under Mans, including hardware, computer operations, and the help desk not to tell Baker anything, and that Mans would talk to Baker the following morning.

47.     The co-worker confided in Baker anyway, and told her what Mans had said, which was that going forward, computer operations would be staffed by three employees instead of two, and the schedules for the two existing employees would change.

8

48.     The next day, on July 21, 2015 Plaintiff saw that a new schedule was posted that would affect her hours.

49.     Until that day, Plaintiff had always worked Monday through Friday, 6AM-2:30PM.

50.     The new schedule required Plaintiff to work on a rotating shift where she would work nights until 10:30PM and come back next day at 6AM.  Plaintiff was also scheduled to work weekends.

51.     Baker met with Mans that morning and explained that she had accepted the computer operator position with Defendant for that position's scheduled hours. Mans said she would talk to the other bosses about it.

52.     Mans got back to Plaintiff later that day.  The modification to the new schedule that Mans offered was to allow Plaintiff to start at 8:30AM, instead of 6AM, after the nights where she worked until 10:30PM.

53.     Baker informed Mans she would talk to human resources.

54.     Baker went to see human resources manager, Michelle Farmer, and inquired about the new schedule.

55.     Farmer said she could not do anything about it.

56.     Baker asked Farmer if she could transfer to a different department and Farmer said that either Ubel or Mans would need to approve a transfer.  Baker believed

9

that since she had asked Ubel if she could apply for a promotion, and Ubel had denied

that request, that Ubel and Mans would also deny a transfer.

57.    Baker also asked Farmer about FMLA leave because of her need to care for

her mom after her mom's fall and requested FMLA paperwork.  Farmer said it was

strange that Plaintiff did not come up the day before to inquire about FMLA.  Plaintiff

responded that her prior schedule did not interfere with her ability to care for her mom

but the new schedule did.

58.    Farmer accused Plaintiff of trying to get out of her new schedule.

59.    Farmer did not provide Plaintiff with the FMLA paperwork she had

requested.

60.    On July 24, 2015 Plaintiff went back to Farmer in human resources and

again requested FMLA paperwork.   Farmer asked if Plaintiff could fulfill her schedule

and again refused to provide FMLA paperwork to Plaintiff.

61.    July 26, 2015, Plaintiff again attempted to visit with Farmer regarding her

need to seek FMLA leave to care for her mother.  She was told Farmer was too busy to

see her.

62.    That day, after work, Plaintiff took her mother to the doctor.  The doctor

advised Plaintiff that she could use family leave to care for her mother and asked

Plaintiff for the paperwork.  Plaintiff informed the doctor that Defendant refused to

give her the paperwork.  Plaintiff's mother's doctor was shocked that Defendant had

refused to provide her with the paperwork and encouraged Plaintiff to call her

congressman.

63.     On July 28, 2015 at 8:30AM Baker attended a meeting between Baker and

Farmer that Farmer had scheduled.  Baker told Farmer that she met with her mom's

doctor and he was shocked that human resources would not give her the FMLA

paperwork she requested.  Farmer asked a lot of personal questions about Baker's

mother's condition and said she would know by the end of day about FMLA

paperwork as Defendant had a new absence policy.

64.     Baker demanded the paperwork, advising Farmer that it was improper to

withhold it.

65.     At 11:30AM on July 28, 2015 Plaintiff was called to human resources by

Mans to meet with Ubel and Mans.  Ubel informed Plaintiff that Farmer had reported

Plaintiff as combative for the conversation occurring earlier that day regarding the

FMLA paperwork and advised Plaintiff that she was terminated.

66.     Plaintiff was asked to return all Von Maur sweatshirts and T-Shirts.  Baker

responded that all of her sweatshirts and T-Shirts were in the desk drawer except for

the one she was wearing.  Baker asked if they wanted her to remove the sweatshirt she

was wearing and Ubel said yes.  Plaintiff gave Defendant the sweatshirt. Ubel retrieved

Plaintiff's personal belongings, and Plaintiff left the premises.

11

## VI.   COUNT I

## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

67.     Plaintiff incorporates paragraphs 1 through 66 of this Petition as if fully set forth herein.

68.     Defendant Von Maur is an "employer" within the meaning of the FMLA.

69.     Beginning in approximately mid-October 2010, Baker was an "eligibile employee" within the meaning of the FMLA.

70.     During her employment with Defendant, Baker's mother suffered from a "serious health condition" within the meaning of the FMLA.

71.     Baker was eligible to take leave under the FMLA in connection with her mother's serious health condition.

72.     Plaintiff invoked her right to take leave under the FMLA.

73.     Defendant failed to provide Plaintiff with the protected leave that the FMLA requires.

74.     Defendant interfered with Plaintiff's right to take leave under the FMLA.

75.     Defendant discriminated against Plaintiff and fired her for attempting to exercise her rights under the FMLA.

76.     Defendant retaliated against Plaintiff as a result of her exercising her rights under the FMLA.

12

77.     Defendant fired Plaintiff as a result of her exercising her rights under the FMLA.

78.     As a result of Defendant's acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff Marlene Baker demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for liquidated damages, for prejudgment and post-judgment interest, for attorneys' fees, for the costs and expenses of this action, for equitable relief including but not limited to reinstatement, and for such other relief as may be just in the circumstances and consistent with the purpose of the Family Medical Leave Act.

## VII.   COUNT II

### DISCRIMINATION IN VIOLATION OF THE IOWA CIVIL RIGHTS ACT, IOWA CODE CHAPTER 216

79.     Plaintiff incorporates paragraphs 1 through 78 of this Petition as if fully set forth herein.

80.     Under the provisions of the Iowa Civil Rights Act, it is unlawful for an employer to discriminate against an employee on the basis of her age and disability.

81.     Defendants have discriminated against Plaintiff with respect to her compensation, terms and conditions of employment by terminating her employment because of her age and disability in violation of the Iowa Civil Rights Act.

82.     Plaintiff had a disability, was perceived as disabled as a result of her broken collar bone, or had a record of such an impairment which substantially limited her in one or more major life activities.

83.     Plaintiff suffered an adverse employment action when her employment was terminated.

84.     A causal connection exists between Plaintiff's protected status and the adverse employment action.

85.     As a proximate result of Defendants' actions, as outlined above, Plaintiff has in the past and will in the future suffer mental and emotional harm, anguish, humiliation, embarrassment, loss of dignity, lost wages and benefits, and lost earning capacity.

86.     Plaintiff requests relief as more fully set forth below.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment and seeks the following relief:

A.      An adjudication that Plaintiff's discharge from employment, as set forth above, was an unfair and/or discriminatory practice within the meaning of Iowa Code § 216.6 (2015);

B.      An award of back pay and benefits pursuant to Iowa Code §§ 216.16(6) and 216.15(9)(a)(8) (2015);

C.      An adjudication that reinstatement is not appropriate and in lieu thereof an award of reasonable front pay and benefits pursuant to Iowa Code §§ 216.16(6) and 216.15(9)(a)(8) (2015);

D.      An award of compensatory damages, including emotional pain, suffering, inconvenience and mental anguish, pursuant to Iowa Code §§ 216.16(6) (2015);

E.      An award of pre-judgment interest as provided by law;

F.      An award of offset, as an additional appropriate remedy pursuant to the Iowa Civil Rights Act for any and all income taxes due from him on account of the other damages and/or recovery awards herein;

G.      An adjudication that Plaintiff is entitled to equitable relief in the form of orders and injunctive relief requiring Defendant to do the following:

(i)     Provide training to supervisory employees regarding how to effectively avoid discrimination in employment on the basis of disability, and to report to the court once every six months for a period of three years on the training provided and on its effectiveness;

(ii)    Require that all disciplinary decisions regarding employees employed by Defendant in Iowa be reviewed by an independent EEO agency for compliance with EEO laws and regulations prior to implementation;

(iii)   Monitor the environment in workplaces operated by Defendant in Iowa to assure that employees are not being treated unfairly based on disability, real or perceived, and report annually to the court for a period of three years on its monitoring; and

15

  (iv) Test and evaluate supervisory employees working for Defendant in Iowa to assure that they do not exhibit or act upon bias against the disabled or bigoted attitudes and opinions, do not tolerate disparate treatment based on disability, real or perceived, by their subordinates, and report annually for a period of three years on its testing and evaluating.

 H. An adjudication that Plaintiff is entitled to reasonable attorney fees pursuant to Iowa Code § 216.16(6) (2015), as well as interest allowed by law and the costs of this action; and

 I. Award such other and additional relief as the Court may deem just and proper.

## VIII. COUNT III

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT as amended by the AMERICAN WITH DISABILITIES ACT AMENDMENTS ("ADAAA"), 42 U.S.C. § 12101 *et seq.*

 87. Plaintiff incorporates paragraphs 1 through 86 of this Petition as if fully set forth herein.

 88. Plaintiff is protected from disability discrimination by the ADAAA.

 89. Plaintiff was qualified under the ADAAA because she was either substantially limited in one or more major life activities, was perceived or regarded as disabled as a result of her broken collar bone, or had a record of such disability as a result of that injury, which substantially limited her in one or more major life activities.

90.     Defendants have discriminated against Plaintiff with respect to her compensation, terms and conditions of employment by terminating her employment because of her disability in violation of the ADAAA.

91.     Plaintiff suffered an adverse employment action when her employment was terminated.

92.     A causal connection exists between Plaintiff's protected status and the adverse employment action.

93.     As a proximate result of Defendants' actions, as outlined above, Plaintiff has in the past and will in the future suffer mental and emotional harm, anguish, humiliation, embarrassment, loss of dignity, lost wages and benefits, and lost earning capacity.

94.     Defendant's conduct was willful and/or undertaken with disregard for Plaintiff's federally protected rights.

WHEREFORE, Plaintiff requests the following relief:

A.      Enter a judgment against Defendant for violating Plaintiff's rights under the ADAAA;

B.      Grant equitable relief to ensure that Defendant will not in the future engage in any employment practice which violates the ADAAA;

17

C.    Order Defendant to make Plaintiff whole by awarding her lost earnings and the value of her lost benefits and order the reinstatement of Plaintiff to her former position or award her front pay in lieu of reinstatement;

D.    Order Defendant to make Plaintiff whole by providing compensation for pecuniary losses including, but not limited to, costs to be incurred for health and life insurance premiums and costs associated with seeking new employment;

E.    Order Defendant to make Plaintiff whole by providing compensation for non-pecuniary losses, including without limitation, emotional distress, mental anguish, pain and suffering, inconvenience, humiliation and the loss of the enjoyment of life;

F.    Award Plaintiff punitive damages against Defendant for acting with malice or reckless indifference in violating the Plaintiff's protected rights under the ADAAA;

G.    Award Plaintiff, against Defendant, a judgment for his reasonable attorney fees and costs pursuant to the ADAAA;

H.    Award pre-judgment interest, against Defendant, as allowed by law; and

I.    Grant such further relief as the Court deems necessary and proper.

## IX.    COUNT IV

### WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

95.    Plaintiff incorporates paragraphs 1 through 94 of this Petition as if fully set forth herein.

96.    Plaintiff made a claim for worker's compensation in connection with her June 2, 2014 work-related shoulder injury.

97.    Plaintiff engaged in statutorily protected activity by making a claim for worker's compensation.

98.    Plaintiff's termination violates well-established public policy of the State of Iowa as defined by statute, regulation, and judicial decision which public policy would be undermined and jeopardized under the circumstances of this case.

99.    Plaintiff was discharged as a result of her participation in protected activity and Defendant's proffered reasons for Plaintiff's discharge are pretextual and otherwise without legitimate reason to justify her termination.

100.    Defendant's termination of Plaintiff constitutes a wrongful discharge in violation of the public policy of this state.

101.    As a proximate cause of Defendants' wrongful termination Plaintiff has suffered damages.

102.    Because Defendant's conduct was willful and wanton, Plaintiff is entitled to punitive damages.

19

WHEREFORE, Plaintiff requests the following relief:

A.    Defendant's conduct complained of herein be declared in violation of the public policy of the State of Iowa;

B.    Plaintiff be awarded back pay, front pay as well as damages for emotional distress and mental anguish;

C.    An order be entered permanently enjoining Defendant from violations of the public policy of the State of Iowa;

D.    Plaintiff be awarded punitive damages; and

E.    Plaintiff be awarded all other relief available in law or equity.

## X.    JURY DEMAND

Plaintiff hereby demands a jury trial for all claims alleged herein.

20

Respectfully submitted,

  /s/ Michael J. Carroll

Michael J. Carroll - AT0001311
Megan Flynn – AT0010000
Coppola, McConville, Coppola, Carroll,
Hockenberg & Scalise, P.C.
2100 Westown Parkway, Suite 210
West Des Moines, Iowa  50265
Telephone:  (515) 453-1055
Facsimile:  (515) 455-1059
E-mail:  michael@csmclaw.com
         megan@csmclaw.com

ATTORNEYS FOR PLAINITFF

Original filed.

21